# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| O'HARE ACCOMMODATIONS, INC. d/b/a AIRPORT ACCOMMODATIONS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09 C 6644 |
| AARON CORPORATION d/b/a TRAVELHERO.COM, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In the present case, plaintiff O'Hare Accommodations, Inc., d/b/a Airport Accommodations ("O'Hare") seeks nearly $270,000 in commission payments allegedly owed by defendant Aaron Corporation d/b/a Travelhero.com ("Aaron"). Relying on the arbitration provision in the parties' written agreement, Aaron moves to dismiss or, alternatively, to stay proceedings pursuant to Federal Rule of Civil Procedure 12(b)(1). As set forth below, we deny the motion.

## BACKGROUND

O'Hare and Aaron entered into a written contract on October 1, 2005 ("Agreement"). (Compl. ¶ 8.) Aaron agreed to "provide[] customers with access" to O'Hare's website for the purpose of making hotel reservations through the Internet. (*Id.* ¶ 1.) Among other things, the Agreement includes an arbitration clause, which states that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration . . . ." (Reply, Ex. A, Agmt. ¶ 10.1.)

The Agreement expired by its own terms on August 31, 2007. (Compl. ¶ 4.) After the Agreement expired, O'Hare continued to perform "similar services" as required under that Agreement and Aaron continued to pay "the same percentage of commissions as required under the . . . Agreement." (Mem. at 5.) According to the complaint, however, Aaron "stopped making full payments," and beginning in July 2009, Aaron "admitted owing Plaintiff commissions on multiple occasions." (Compl. ¶¶ 14–15.) On September 17, 2009, O'Hare "terminated its business relationship with" Aaron. (*Id.* ¶ 17.)

O'Hare filed its complaint on September 21, 2009, in the Circuit Court of Cook County, Illinois, seeking unpaid commissions for services provided to Aaron's clients after the expiration of the Agreement. (Mem. at 1; Compl. ¶¶ 14–17.) Aaron subsequently removed the case to federal court on October 21, 2009. (Mem. at 1.) Arguing that we lack subject matter jurisdiction, Aaron moves to dismiss the complaint, or to stay the proceedings pending arbitration, pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Id*. at 2.)

## STANDARD OF REVIEW

As the Seventh Circuit has stated on numerous occasions, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc*. 516 F.3d 557, 561 (7th Cir. 2008) (internal quotation omitted); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005). Although moving parties, like Aaron, frequently cite to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6) in support of a motion to stay proceedings pending arbitration, the Seventh Circuit has not directly ruled on the applicability of Rule 12 to these circumstances. *Cont'l Cas. Co.*, 417 F.3d at 731–33 & n.7; *see Molton, Allen & Williams, LLC v. Cont'l Cas.*

*Ins. Co.*, No. 09 C 6924, 2010 WL 780353, at *8 (N.D. Ill. Mar. 3, 2010). Regardless, our "authority to stay proceedings does not derive from Rule 12(b) . . . but rather from" the Federal Arbitration Act ("FAA"). *Cont'l Cas. Co.*, 417 F.3d at 732 n.7. Section 3 of the FAA provides that a court may stay the trial of an action until arbitration has been completed, so long as the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration" pursuant to a written agreement. 9 U.S.C. § 3.

In evaluating whether a stay is appropriate, a court must bear in mind that the FAA "embodies a strong federal policy in favor of arbitration." *Sweet Dreams, Unltd., Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). Indeed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S. Ct. at 941; *Cont'l Cas. Co.*, 417 F.3d at 730–31. Nonetheless, "[a] court's decision to stay proceedings pending arbitration is a question of contract interpretation, and an arbitration clause cannot be enforced against a party who has not agreed to be bound." *Trustmark Ins. Co. v. Transam. Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007); *Cont'l Cas. Co. v. LaSalle RE Ltd.*, 511 F. Supp. 2d 943, 946 (N.D. Ill. 2007); *see Cont'l Cas. Co.*, 417 F.3d at 730–31 (providing that "whether the parties have agreed to arbitrate is a question" for the court regarding contract formation). The court's inquiry thus focuses on the existence and scope of the written agreement to arbitrate required by the FAA. *See Sweet Dreams*, 1 F.3d at 641 (stating that "we will not compel parties to arbitrate disputes unless they have agreed to do so" and evaluating the terms of the contract).

**ANALYSIS**

Here, the parties do not dispute that the Agreement included an arbitration provision. They also do not dispute that the fixed term of the Agreement expired on August 31, 2007. Aaron contends, however, that the parties mutually extended the Agreement, as evidenced by their continued relationship after August 31, 2007 and by O'Hare's lawsuit seeking commissions "as if the . . . Agreement were controlling."[1] (Mem. at 4; Reply at 2.) Aaron argues that because the parties modified the termination clause of the Agreement, (Reply at 5), it continues to be a valid, binding contract requiring arbitration of the present dispute (*id.* at 1–5; Mem. at 5).[2] In response, O'Hare asserts that because the dispute concerns only post-termination conduct, it cannot fall under the Agreement. (Resp. at 3, 5–9.) O'Hare emphasizes that the Agreement expired two years before it filed its complaint. (*Id.* at 6.)

**A.     Expiration**

The first question before us is whether the arbitration provision encompasses the current dispute, despite the fact that it arose after the contract expired. Where a contract includes a

---

[1] Aaron's characterization of O'Hare's claim is not entirely accurate. (*See* Reply at 6 ("Plaintiff [is] seeking commissions in this lawsuit as if the Affiliate Agreement were controlling.").) O'Hare has not sued for commissions under the Agreement in a breach of contract action. Rather, O'Hare's complaint alleges unjust enrichment. While the damages at issue may be the same, O'Hare's cause of action does not assume that the Agreement controls, as Aaron implies.

[2] In addition to its modification argument, Aaron asserts in its reply that the parties' post-termination conduct demonstrates the formation of an implied-in-fact contract "to either disregard the termination date or extend the . . . Agreement beyond its termination date." (Reply at 6–8.) We need not address this argument, however, because "[a]rguments made for the first time in a reply brief are waived." *U.S. v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006); *see Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (concluding that an argument not fully developed until the reply brief had been forfeited).

broad arbitration provision, like the one found in the Agreement, the requirement to arbitrate disputes arising under that contract may continue even after its termination. *See Sweet Dreams*, 1 F.3d at 643 (citing *Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243, 255, 97 S. Ct. 1067, 1074 (1977)). In *Sweet Dreams*, a decision relied on by Aaron, the Seventh Circuit rejected the argument that expiration of the parties' agreement mooted the arbitration requirement. 1 F.3d at 643 (staying litigation pending arbitration of several post-expiration claims that had "their genesis in the [a]greement"). The court stated that "[i]f the parties had wished to limit the duty to arbitrate to the term of the [a]greement itself they could have said so explicitly." *Id.* Because the disputes in *Sweet Dreams*—tort claims arising after the parties' joint venture agreement expired and their subsequent relationship soured—"follow[ed] . . . on the heels of the [a]greement," the court found they were arbitrable. *Id.* at 643–44.

Here, however, Aaron does not contest that O'Hare's claim arose well after the Agreement's termination date, rather than on the heels of expiration as in *Sweet Dreams*. Although it is unclear precisely when Aaron stopped making full payments owed to O'Hare stemming from their post-Agreement relationship, the September 2009 complaint indicates that Aaron continued to pay commissions and recognize its obligation to do so "until recently." (Compl. ¶ 1.) The Seventh Circuit has stated that "the dead hand of a long-expired arbitration clause cannot govern forever." *Kroll v. Doctor's Assocs.*, 3 F.3d 1167, 1169 (7th Cir. 1993); *see Sweet Dreams*, 1 F.3d at 643 (noting that the question would be "different and more difficult . . . if the disputes had arisen a significant time after the expiration of the [a]greement"); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local 150*, 422 F.3d 522, 526–27(7th Cir. 2005) ("[I]t remains true that at some point . . . beyond the expiration of the

CBA, it would be utterly unreasonable to presume that the parties still had an agreement to arbitrate CBA-based grievances."). As the court explained in *Local 703 v. Kennicott Brothers*, the federal presumption in favor of arbitration "weakens as the time between expiration and grievance events increases." 771 F.2d 300, 303–04 (7th Cir. 1985). In *Kennicott Brothers*, for example, the Seventh Circuit held that the disputes at issue were not arbitrable because the events triggering the grievances occurred six months after the contract's termination. *Id.*

In light of the factual distinctions, we find that *Sweet Dreams* does not control this case and that the Seventh Circuit's more recent decisions in *Nissan North America, Inc v. Jim M'Lady Oldsmobile, Inc.* are instructive. 486 F.3d 989 (7th Cir. 2007) [hereinafter *Nissan II*]; 307 F.3d 601 (7th Cir. 2002) [hereinafter *Nissan I*]. There, Nissan entered into an agreement with M'Lady, allowing it to operate as an authorized car and truck dealer. *Nissan I*, 307 F.3d at 602. Although that agreement expired on May 1, 1999, the parties continued doing business. *Id.* More than a year later, Nissan informed M'Lady that its authorization to act as a Nissan dealer would be revoked. *Id.* M'Lady protested, and Nissan filed a federal action under the FAA to compel arbitration of the dispute. *Id.* at 602–03. The district court compelled arbitration and M'Lady appealed. *Id.*

In vacating the district court's order on the first appeal, the Seventh Circuit held that "a contract that by its own terms expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement, and thus the termination of the current relationship cannot, at least absent additional evidence, be said to relate in any way to the expired contract." *Id.* at 604 (noting also that the "presumption of arbitrability does not fully apply in cases where the arbitration agreement is contained in an *expired* fixed-term contract"). The court rejected

Nissan's argument that "the original contract never expired because [it] waived the expiration date," given that Nissan failed to offer any evidence that M'Lady approved the alleged waivers. *Id.* (remanding for additional evidentiary proceedings as to whether the parties entered into an oral contract or extended the agreement's term). Ultimately, Nissan's arguments in favor of arbitration could not persuade the court because the "salient fact [wa]s that there [wa]s no evidence of a written agreement to arbitrate that survived the expiration" of the parties' agreement. *Nissan II*, 486 F.3d at 995.

In light of the *Nissan* decisions, we cannot conclude that the present dispute is subject to arbitration. The dispute concerns commission payments "accrued entirely during the course of the parties' continued performance and relationship subsequent" to the Agreement's expiration. (Compl. ¶ 19.) We find that the Agreement, which expired months before O'Hare's claim arose, "cannot possibly be the basis" of the parties' more recent business relationship. *See Nissan I*, 307 F.3d at 604; *see also Kennicott Brothers*, 771 F.2d at 303–04. Accordingly, the commissions sought—even if identical in value to commissions awarded under the Agreement—did not arise out of the Agreement. (*See* Reply, Ex. A, Agmt. ¶ 10.1 (providing that "[a]ny controversy or claim arising out of or relating to this contract . . . shall be settled by arbitration").)

**B.       Modification**

Aaron's principal argument is not that the arbitration provision extended indefinitely to cover post-expiration conduct but that "the contract was extended through mutual agreement of the parties as evidenced by their continued performance under the contract until September 17, 2009." (Mem. at 4; Reply at 5–6.) Aaron contends that, consistent with state law, the parties'

conduct proves that they mutually acquiesced to contract modification, thus extending their relationship under terms identical to those found in the Agreement—including the arbitration provision. (Mem. at 4; Reply at 5–6.)

The Seventh Circuit in *Nissan* dismissed this very argument, however. There, Nissan argued, as does Aaron, that "the parties continued to operate under an identical agreement as evidenced by the parties' course of dealing." *Nissan II*, 486 F.3d at 994. The Seventh Circuit acknowledged that "the parties continued to conduct business" after their contract expired and thus "[s]ome kind of agreement governed the relationship." *Nissan II*, 486 F.3d at 995. Nonetheless, as in this case, "there is no evidence that part of that agreement was a promise to arbitrate any disputes." *Id.* The court repeatedly rejected Nissan's claims of an alleged oral modification because Nissan pointed "to no written agreement other than the one that has expired, and agreements to arbitrate must be in writing." *Nissan I*, 307 F.3d at 604–05; *see Nissan II*, 486 F.3d at 994–95; *see also Nissan II*, 486 F.3d at 997 ("Even if we assume that a contractual relationship can be implied from that conduct, there is no indication . . . that either party agreed to extend the agreement to arbitrate beyond the expiration date" of their agreement.). We similarly conclude that, because Aaron cannot point to any effective written agreement that requires arbitration, its motion must be denied. Although the parties' conduct demonstrates that they wished to pursue an ongoing relationship after August 31, 2007, there is no written indication that the parties elected arbitration to govern any disputes arising out of that post-termination relationship.

## CONCLUSION

For the reasons set forth above, we deny Aaron's Motion to Dismiss Plaintiff's Complaint or to Alternatively Stay Proceedings Until the Conclusion of Arbitration Between the Parties. [Dkt. No. 17.] It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: May 25, 2010